**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CR NO. 17-216-1 (CKK)(GMH) |
| | : | |
| v. | : | |
| | : | |
| **TIFFANY HENRY,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

### **GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(C) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### **Introduction**

Tiffany Henry, a thirty-one year old female with recent connections to the District of Columbia, has been charged by indictment with Conspiracy to Distribute and Possession with Intent to Distribute Marijuana and Cocaine in violation of 21 U.S.C. § 846, Unlawful Use of a Communication Facility, in violation of 21 U.S.C. § 843 (c)(2)(A), Unlawful Distribution of Marijuana, in violation of 21 U.S.C. § 841(a)(1) and 841 (b)(1)(D), Unlawful Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841 (a)(1) and 841 (b)(1)(D), and Unlawful Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841 (a)(1) and 841 (b)(1)(C). Ms. Henry's involvement in this well-planned and organized conspiracy to

distribute marijuana and cocaine, support the government's contention that the defendant should be held without bond pending trial to ensure the safety of the community.

## Procedural History and Applicable Authority

At the initial appearance on November 15, 2017, the government orally moved for detention pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(C) of the federal bail statute, which was granted by the Court. The Court set a detention hearing for Monday, November 20, 2017. The government contends that the defendant is a danger to the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In an indicted case at a detention hearing, the government may proffer evidence. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there is: (1) no condition or combination of conditions that would assure the safety of the community and (2) no information in the defendant's personal background and characteristics that would serve as a basis to rebut the presumption of dangerousness. Therefore, Ms. Henry should be detained. *See* 18 U.S.C. § 3142(e)(1).

**Nature and Circumstances of the Offenses Charged**

This case arises from anonymous tip obtained by the members of the Metropolitan Police Department's (hereinafter "MPD") Narcotics and Special Investigations Division (Drug Interdiction Unit). In August of 2017, members of MPD's Drug Interdiction Unit received a tip in relation to suspicious activity and possible drug sales happening at the location of 901 6th Street, Apt. 509A, S.W., Washington, D.C. The tip included the names of the people who resided at the location along with identifying information. Specifically, defendants Tiffany Frances Henry and Jeremy Bennett Albrecht were mentioned along with their dates of birth and other identifiers. Law enforcement also received numerous complaints regarding the smell of marijuana emanating from the defendants' apartment, noting that it was continuous and pervasive immediately upon reaching the fifth floor of the building. It was reported that hundreds of suspected transactions were taking place and that purchasers were often provided items in gift bags.

Further investigation by law enforcement revealed that defendant Henry maintained a social media account, which included advertisements in a menu format offering the sale of illicit items. Defendant's Henry's menu offered a wide array of marijuana and THC infused products. The menu included the name, description, weight and price for each product. The social media account for defendant Henry also included photographs of herself and items that she had for sale and/or manufactured. *See* Government's Exhibit #1 (attached).

Members of MPD's Drug Interdiction Unit acting in an undercover capacity were able to engage defendant Henry in discussions regarding the purchase of illicit products. Those products included marijuana, THC infused items such as edibles and THC concentrate products such as wax, shatter and oils. During the course of those discussions, defendant Henry provided the afore-

referenced menu directly stating "That's the link to my menu I update regularly" and "Let me know if you need anything". *See* Government's Exhibit #2 (attached).

On October 24, 2017, a member of MPD's Drug Interdiction Unit engaged with defendant Henry again through social media and arranged to purchase a quantity of marijuana as well as THC infused items. The undercover MPD officer, who had been provided pre-recorded funds, advised defendant Henry that IT was at the agreed upon location. Defendant Henry responded that her friend with dark curly hair was coming to meet the undercover officer. A short time later, the undercover officer was greeting by a female with dark curly hair on the sidewalk outside of the apartment building.

The female, later identified as defendant Angela Cortez, gave the undercover officer a small, black and white bag gift bag, which contained two gray plastic containers with a plant substance and one small container with a paste like substance. Both had the handwritten name of the product on a label. *See* Government's Exhibit #3 (attached). In exchange for the items, the officer provided defendant Cortez a sum of pre-recorded funds and left the area. The transaction was captured on video.

Another undercover officer that was positioned on the fifth floor in the vicinity of Apt. #509, observed defendant Cortez exit Apt. #509 prior to the drug transaction and return to Apt. #509 once the drug transaction was complete. Notably, defendant Cortez used a key to gain entry to the apartment. The undercover officer who observed defendant Cortez's movements was shown the video of the drug transaction and confirmed that the person was the same one that he saw exit and enter Apt. #509. A small portion of the plant substance and paste was field-tested and reacted positively for the presence of THC.

On October 26, 2017, MPD officers obtained a search warrant for the premises located at the Waterside Towers Apartments located at 901 6th Street, Apt. #509, SW, Washington, D.C. and on October 30, 2017, members of MPD's Drug Interdiction Unit executed the search warrant. Upon entering the apartment, defendant Henry was located in the hallway near the front door and defendants Albrecht and Cortez were located inside bedroom #2 of the residence.[1] The following is an accounting of *some* of the items recovered during the course of the search:

- Approximately 1 kilogram of plant-like substance, which field-tested positive for the presence of THC.
- Several packages of amber wax-like and crystallized items that field-tested positive for the presence of THC.
- Assorted items and edibles that contained THC packaged in various containers including labeled glass jars, heat-sealed plastic envelopes, and plastic cylinders.
- Several items containing a white powdered substance that field-tested positive for cocaine with a combined weight of 71.5 grams.
- Several caches containing U.S. currency located around the residence totaling approximately $75,683.12.
- Numerous unidentified pills.
- Numerous digital scales, grinders, hand-rolled cigar machines, RX label stickers, medicine bottles, and ledgers.
- Numerous hand-rolled cigars, syringes, vape pens and glass marijuana smoking

---

[1] Defendant Henry was listed as one of the lease-holders for the apartment. Additionally, law enforcement learned that defendant Albrecht filed an application to be added to the lease for the apartment as well.

5

instruments.

Additional edibles items recovered include cookies, tubes, mushrooms and gummy candies, all of which are suspected to contain THC. *See* Government's Exhibits #4-10 (attached). Additionally, during the course of the search, defendant Cortez was positively identified by law enforcement as being involved in the October 24, 2017 drug transaction. Each of the defendants were arrested and transported by law enforcement for processing.

The first factor, the nature and circumstances of the offense charged, clearly weighs in favor of detention. Here, a grand jury found probable cause to believe that that defendant Henry was involved in a conspiracy to distribute large amounts of marijuana and cocaine. The nature of this offense and the statutory presumption connected thereto weigh heavily in favor of detention.

### **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against defendant Henry is quite strong. As set forth above, Ms. Henry was identified as being involved in the distribution of controlled substances. In fact, she directly communicated with an undercover officer through social media, for the sale of marijuana and other edible items containing marijuana. The undercover officer upon her direction, traveled to her residence and purchased items that field-tested positive for the presence of THC. MPD officers later obtained a search warrant for that same residence which is leased in her name and defendant Henry was present at the time that the warrant was executed. As detailed above, law enforcement recovered countless items of contraband in the residence, including numerous marijuana plants and plant material, white powdery substance which field-tested positive for cocaine, pills, and various items constituting indicia of drug distribution activity, much of which was in plain view.

### Ms. Henry's History and Characteristics

The third factor, defendant's history and characteristics, similarly weighs in favor of the United States' detention request. Although defendant Henry does not appear to have prior criminal convictions, her recent connections to the District of Columbia and her report to the Pre-Trial Services Agency that she is unemployed, support detention. Most concerning to the government is that defendant Henry was blatantly operating this well-planned and organized distribution operation from her place of residence and using the internet to advertise it. Defendant Henry should not be released back into the community.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The charged offense here (given that it is a Controlled Substances offense punishable by a maximum term of imprisonment of more than ten years and therefore meets the criterial of 18 U.S.C. § 3142(f)(1)(C)), carries with it a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense. 18 U.S.C. § 3142(e)(3) and (e)(3)(A). By itself, an indictment establishes that probable cause and triggers the presumption. *See*, *e.g., United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("the indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community").

Under the Bail Reform Act, 18 U.S.C. §§ 3142 et seq., "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in

drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." *Strong*, 775 F.2d at 507. As noted by the D.C. Circuit:

> The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because:
>
> "Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences."

*United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that very "real-world" concerns lie behind the recognition of the inherent, pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses.

The presumption is rebuttable and does not shift the ultimate burden of proof from the government's shoulders. But it does create a burden of *production* on the defense to submit at least some credible evidence that might purport to overcome it. And even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court among others in determining whether the defendant should be detained, and the presumption retains

"evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); *United States v. Rueben*, 974 F.2d. 580, 586 (5th Cir. 1992) (the mere production of evidence [regarding flight risk for a drug offense] does not completely rebut the presumption . . . . In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society" (citation omitted); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991) ("Although the government retains the burden of persuasion, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption . . . . Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant. . . . *see also United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir.1985) (rejecting "bursting bubble" approach)" (internal citation omitted)); *see also United States v. Ali*, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained").

Ms. Henry's scheme and planning in this conspiracy overwhelmingly demonstrate that she is a danger to the community. In the end, defendant Henry cannot overcome the statutory presumption that, in order to protect the community she should be held without bond pending trial.

## **Conclusion**

The Court should grant the government's motion to detain Ms. Henry pending trial because she has demonstrated that she is a danger to the community and find that she has failed to rebut the presumption of dangerousness.

>Respectfully submitted,
>
>JESSIE K. LIU
>UNITED STATES ATTORNEY
>D.C. Bar No. 472-845
>
>By:       /s/
>LISA NICOLE WALTERS
>D.C. Bar No. 974-492
>Assistant United States Attorneys
>555 Fourth Street, N.W., Fourth Floor
>Washington, D.C. 20530
>Telephone: (202) 252-7499
>E-mail: Lisa.Walters@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Lisa N. Walters, certify that, on this 18th day of November, 2017, the government filed a copy of the foregoing Memorandum in Support of Pre-Trial Detention on the Electronic Case Filing ("ECF") system and served a copy on counsel for Ms. Henry, Robert Becker, Esquire, through the ECF.

/s/
Lisa N. Walters
Assistant United States Attorney