**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> TIFFANY HENRY, <br><br> Defendant. | **Criminal No. 17-216-01 (CKK)** |

**MEMORANDUM OPINION**
(June 11, 2018)

On May 22, 2018, Defendant Tiffany Henry, through counsel, filed her [65] Motion to Amend Conditions of Release ("Def.'s Mot."), requesting that she be placed into the High Intensity Supervision Program ("HISP") and permitted to live in an apartment pending any trial in this case. In its opposition, the Government emphasized that Ms. Henry's release from the monitored setting of the halfway house into the HISP would create a number of further opportunities for Ms. Henry to engage in the drug activity for which she has been indicted, undermining the safety of the community. *See* Gov.'s Opp'n to Def.'s Mot. to Amend Conditions of Release, ECF No. 66 ("Gov.'s Opp'n"), at 4-7. Most of the further briefing permitted or ordered by the Court focused on Ms. Henry's health concerns with continued residence in the halfway house. *See, e.g.*, Min. Orders of May 30, 2018, and June 4, 2018. Upon consideration of the briefing,[1] the relevant legal

---

[1] The Court's consideration has focused on the following documents:

- Mot. to Amend Conditions of Release, ECF No. 65 ("Def.'s Mot.");
- Gov.'s Opp'n to Def.'s Mot. to Amend Conditions of Release, ECF No. 66 ("Gov.'s Opp'n");
- Def.'s Reply to Gov.'s Opp'n to Amend Conditions of Release, ECF No. 67 ("Def.'s Reply");
- Gov.'s Suppl. Opp'n to Def.'s Mot. to Amend Conditions of Release, ECF No. 68 ("Gov.'s Suppl. Opp'n");

1

authorities, and the record as a whole, Ms. Henry's [65] Motion is **DENIED**.

On November 13, 2017, Ms. Henry was charged in a five-count Indictment with: Conspiracy to Distribute and Possess with Intent to Distribute Marijuana and Cocaine (Count One); Unlawful Use of a Communication Facility (Count Two); Unlawful Distribution of Marijuana (Count Three); Unlawful Possession with Intent to Distribute Marijuana (Count Four); and Unlawful Possession with Intent to Distribute Cocaine (Count Five). Subsequent to the indictment, Magistrate Judge G. Michael Harvey issued an arrest warrant for Ms. Henry.

Ms. Henry appeared in court before Magistrate Judge Harvey, on November 15, 2017, for her initial appearance and arraignment, and she entered a plea of not guilty on all charges. The Government made an oral motion for pretrial detention and Magistrate Judge Harvey scheduled a November 20, 2017, detention hearing in response thereto. At the conclusion of the November 20, 2017, detention hearing, Magistrate Judge Harvey denied the Government's motion for detention and released Ms. Henry to a halfway house. The Government appealed that ruling, and on November 30, 2017, this Court held a hearing on the issue of whether Ms. Henry should be released or detained pending trial. The Court determined that Ms. Henry could be released pending trial but that such release would be made subject to the following conditions:

> that she be released into a work release/halfway house; that she have no social passes, including that she not possess a passport; that she stay away from the apartment she leased; that she report to PSA weekly by telephone; that she be placed in a weekly drug testing

---

- Def.'s Resp. to Gov.'s Suppl. Opp'n to Def.'s Mot. to Amend Conditions of Release, ECF No. 69 ("Def.'s Suppl. Reply");
- Gov.'s Resp. to Def.'s Resp. to Gov.'s Suppl. Opp'n to Def.'s Mot. to Amend Conditions of Release, ECF No. 71 ("Gov.'s Resp. to Def.'s Suppl. Reply"); and
- Gov.'s Notice of Filing, ECF No. 72.

"With Ms. Henry's consent to decide the issue on the pleadings, and an indication that the Government consented in any event to continue the Motion Hearing tentatively scheduled for May 31, 2018, the Court [vacated] the Motion Hearing and [accordingly now] decide[s] the issue on the pleadings." Min. Order of May 30, 2018.

program; and that she seek and maintain employment.

Dec. 1, 2017 Mem. Op. and Order, ECF No. 22, at 2.

On December 11, 2017, Ms. Henry was transported to and placed in a halfway house. On December 20, 2017, Ms. Henry moved for a social pass from the halfway house in order to spend several days with her family for Christmas. Over the Government's objection, the Court granted-in-part and denied-in-part Ms. Henry's request, permitting her release on December 25, 2017, from 9:00 a.m. until no later than 5:00 p.m. In doing so, the Court found that

> Since being placed in the halfway house on December 11, 2017, Ms. Henry has been compliant with the rules and regulations of the halfway house; she has reported to PSA by telephone as required; she has been actively seeking employment; and she has tested negative for illegal substances at her December 14, 2017 and December 21, 2017 drug tests.

Dec. 22, 2017 Mem. Op., ECF No. 30, at 3. In light of "Ms. Henry's desire to spend time with her family during the Christmas holiday," the Court made "a *one-time exception* to the condition of 'no social passes.'" *Id.* (emphasis added). In January 2018, the Court denied Ms. Henry's second request for a social pass, citing the Government's characterization of that request as an attempted end-run around the Court's prohibition of social passes. Jan. 26, 2018 Mem. Op., ECF No. 38, at 3-4.

As it did before, this "Court has every indication that Ms. Henry remains in compliance with the Court's [19] Release Order." *Id.* Ms. Henry has submitted a series of letters from her halfway house and employers attesting to her fine performance under the current release conditions. *See* Attachs. to Def.'s Mot., ECF No. 65-1; Attach. to Def.'s Reply, ECF No. 67-1. But compliance—even model compliance—with the Court's requirements is not enough to warrant adjustment of her pretrial release conditions. Only if there has been a development in Ms. Henry's situation that would affect the Court's assessment of the "least restrictive" conditions of

release that "will reasonably assure . . . the safety of any other person and the community," 18 U.S.C. § 3142(c), could she be entitled to the adjustment that she requests.

The Court does not find any evidence that warrants an adjustment to her pretrial release conditions. The Government is correct to observe that Ms. Henry's placement into HISP would create opportunities for her to re-start her alleged narcotics business. *See* Gov.'s Opp'n at 4-5. For example, she could make use of presumably unmonitored internet access at her apartment to arrange drug transactions, which could be consummated at her apartment or in its vicinity. *See id.* Monitoring via ankle bracelet would not detect such a business, nor would her employers' gracious offer to serve as third-party custodians,[2] *see id.* at 6, nor necessarily would periodic visits by pretrial services. Accordingly, the Court finds that release into the HISP would not mitigate the Court's concerns based on the indictment against Ms. Henry in this case. She must remain under the supervision of the halfway house pending trial.

Several alleged issues at the halfway house have attracted the Court's further attention, but they are being addressed and accordingly do not cause the Court to adjust Ms. Henry's pretrial release conditions for these reasons either. In particular, Ms. Henry has expressed concerns about proper observance of her dietary restrictions and about the sanitary conditions at the halfway house.

Most concerning is her claim that she became sick to the point of hospitalization based on food provided by the halfway house. Def.'s Suppl. Reply at 1.[3] There is not sufficient evidence

---

[2] Ms. Henry proposes to live on her own, not with any such third-party custodians. *See, e.g.*, Def.'s Mot. at 2 (citing her employers' "willingness to serve as third party custodians, should that be necessary, so that Ms. Henry can obtain her own living quarters rather than being required to live at the halfway house").

[3] In earlier briefing, Ms. Henry alleged a belief that the food at issue was not gluten free. Def.'s Reply at 1. But she does not repeat that allegation in the pleading with which she submitted the hospital record. *See* Def.'s Suppl. Reply at 1. Accordingly, the Court shall address the gluten

4

to conclude, however, that Ms. Henry's hospitalization on February 1, 2018, with the diagnoses of nausea, vomiting, and diarrhea, Attach. to Def.'s Suppl. Reply, ECF No. 69-1, was in fact attributable to halfway house food. Ms. Henry evidently had complained to halfway house staff of flu-like symptoms late in January 2018. Gov.'s Resp. to Def.'s Suppl. Reply at 2. The halfway house's records from February 1, 2018, cited her having flu-like symptoms as the reason for her request to be taken to the hospital. Gov.'s Notice of Filing, ECF No. 72. Moreover, the halfway house's records suggest that Ms. Henry did not eat dinner provided by the halfway house on either January 31, 2018, or February 1, 2018. Gov.'s Resp. to Def.'s Suppl. Reply at 2. None of the information or documentation provided by Ms. Henry completes a causal chain linking her illness to food provided by the halfway house, rather than to the flu or another cause. Moreover, the halfway house is unaware of any symptoms of the aforementioned kinds among other residents on or around February 1, 2018. *Id.* at 4. The Court consequently finds that Ms. Henry need not be reassigned away from the halfway house on the basis of what appears to be an unrelated hospitalization four months ago without analogue since then.

Ms. Henry also alleges that, on some occasions in April and May 2018, she was served food containing gluten, despite having a gluten intolerance. Def.'s Suppl. Reply at 1-2. In the course of briefing, the halfway house has developed a plan to prevent this from happening again. The halfway house already has reminded the catering company to double check the food for Ms. Henry. Gov.'s Resp. to Def.'s Suppl. Reply at 4. Going forward, several layers of halfway house staff will be involved in reviewing Ms. Henry's meals, and she too will have a role. *Id.* While the plan is not foolproof, and Ms. Henry must still take some responsibility for ensuring that she does not consume gluten, the Court is satisfied at this time that she need not be reassigned away from

---

allegations separately below.

5

the halfway house on this basis.

Lastly, Ms. Henry has complained recently of "skin rashes which she attributes to poor sanitary conditions, including mold and bed bug and rodent infestations at the halfway house." Def.'s Mot. at 3. *But see* Def.'s Reply at 1 (clarifying that the insects are "some other form of biting insects," rather than bed bugs). She does not dispute the Government's claim that she did not previously raise these issues with the halfway house. *See* Gov.'s Suppl. Opp'n at 2 (making claim); Def.'s Suppl. Reply (offering no rebuttal). Counsel to the Government has personally reviewed the premises of the halfway house, which did not reveal any such issues. *Id.* at 1. The halfway house's efforts to maintain cleanliness include its employment of companies that provide daily sanitation services and monthly preventative treatment for pests. *Id.* at 1-2. The pest control company has not reported bed bugs and rodents during Ms. Henry's residence there. *Id.* Ms. Henry should immediately report any further sanitary issues to halfway house personnel, including the location on the premises where she observes the issue. At this time, the Court finds no need to reassign Ms. Henry from the halfway house on this basis.

For the foregoing reasons, the Court finds that Ms. Henry's current conditions of pretrial release remain the "least restrictive . . . combination of conditions" that the Court can impose to "reasonably assure . . . the safety of any other person and the community." 31 U.S.C. § 3142(c)(1)(B). Ms. Henry's [65] Motion to Amend Conditions of Release is accordingly **DENIED**.

A separate Order accompanies this Memorandum Opinion.

Dated: June 11, 2018

                                                               /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge