# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | 17-CR-216 (JKK) |
| | : | |
| v. | : | STATUS HEARING: 2/15/2019 |
| | : | |
| **TIFFANY HENRY,** | : | |
| Defendant. | : | |

## MOTION FOR HOLIDAY RELEASE

COMES NOW, Tiffany Henry, by and through undersigned counsel, and hereby requests that this Honorable Court permit Ms. Henry's release from the Halfway House from 8:00 p.m. December 24, 2018 to 8:00 p.m. December 25, 2018 and into the third-party custody of her father, Douglas Henry, to celebrate the Christmas Holiday with her family with a Court Order to go directly from the halfway house to ▇▇▇▇▇▇▇▇▇▇ Vienna, VA  22182.[1]  The government opposes this Motion.  In support of the Motion, undersigned states as follows:

1. On December 22, 2017, Ms. Henry was placed into halfway house in connection with this case.

2. Accordingly, Ms. Henry has remained at the halfway house for almost an entire year. During this time, she has been denied social passes [E.C.F. 38] and the Court also denied release for the Thanksgiving Holiday [E.C.F. 107].

---

[1] The address is redacted pursuant to Fed. R. Crim. P. 49.1 and can be provided to the Court, government, and/or Pretrial Services upon request.

3. Ms. Henry has no prior criminal convictions and is a duel degree major and 2009 graduate from the Virginia Tech University. She holds both a Bachelor of Arts in Fashion Design and a Bachelor of Science in Business Management. She has strong ties to the community and has lived in the District of Columbia, Maryland, Virginia [hereinafter "DMV Area"] her whole life.[2]

4. Ms. Henry is and has remained compliant with her conditions of release at the halfway house. In fact, undersigned counsel spoke to with the Assistant Director at Fairview Halfway House on December 18, 2018 who indicated Ms. Henry continues to be in compliance. Ms. Henry has complied with her conditions regarding drug testing.

5. Ms. Henry is gainfully employed. It is a testament to Ms. Henry's tenacity and desire to be productive during the pendency of this case that she has managed to obtain and maintain gainful employment while having federal criminal drug charges hanging over her head. That is in addition to having severe restrictions on her freedom of movement and requirements to follow stringent rules and policies at the halfway house that limit severely limit her contact with the outside world.

6. Assuming the government raises the same generalized concerns it has to previous requests for holiday release or social passes [E.C.F. 105], undersigned will address these in advance.

7. In its most recent opposition to Ms. Henry's release for the Thanksgiving holiday, the government made three primary arguments against her release. First, the government argued that releasing her to have a holiday meal with her family would create a danger to the community. Second, the government argues Ms. Henry will have free access to

---

[2] Except for a few lengthy months' long trips outside the DMV over the years including a religious mission trip in 2007. She has lived continuously and exclusively in the DMV area for at least the last five years.

internet, travel, and telephone calls without supervision, which could lead to her restarting her alleged drug business. Finally, the government argues that because Ms. Henry's mother was on the lease, that "[u]pon information and belief" that Ms. Henry's mother "arguably condoned" the defendant's "[alleged] illegal narcotics activities."

8. While undersigned continues to review the record as new counsel and understands the Court's reasoned concern about loosening the pretrial restrictions it initially placed on Ms. Henry, undersigned submits these concerns are based on largely hyperbolic and unparticularized arguments the government has repeatedly put forward during the pendency of this case.[3] After all, pretrial release is not an exercise where the standard is "abundance of caution." Rather it requires sufficient evidence of danger to be clear and convincing before detention is an appropriate choice.

9. It is important to note that the government has not forward a single allegation of *actual* violence in this case or anything in Ms. Henry's background that would support the notion that Ms. Henry is *actually* violent or *actually* dangerous. The government has failed to put forward evidence that Ms. Henry is so dangerous that she should not be permitted to spend a 24-hour period with her family celebrating Christmas and honoring her religious beliefs without jeopardizing the community's safety.

10. While Ms. Henry has been indicted on crimes the federal code considers dangerous, in this case "dangerousness" is a legal fiction. Despite the plethora of marijuana, cash, and contraband recovered from the apartment where all three codefendants resided, one critical

---

[3] Every single argument the government has repeatedly advanced in opposing Ms. Henry's release on social passes could be made to every single criminal defendant charged with a crime, which would completely undermine the purpose of the Bail Reform Act that relies on the exercise of discretion in each individual case based on a clear burden of proof.

thing was missing that distinguishes this case from many federal drug cases: guns. The police did not recover any guns or weapons that the government frequently argues are common and consistent with drug dealers—particularly drug dealers who are so dangerous where no set of conditions can be imposed to reasonably assure the safety of the community.

11. The government has repeatedly argued that Ms. Henry could restart her drug business if given access to the internet. This argument may have carried some weight in the early stages of this case, but it ignores common sense and is simply belied by reality for two reasons. First, the government has not put forth any such evidence that Ms. Henry's so-called extensive drug ties exist. As far as the defense is aware, these are just assumptions made based on the quantity of controlled substances recovered in a three-resident apartment.[4]

12. Second, any alleged illegal drug distribution business was completely destroyed when the Metropolitan Police Department executed the search warrant in this case. Ms. Henry no longer has her own apartment. She has spent an entire year in the halfway house with no unmonitored internet access, phone access, or social passes (except for a limited pass last Christmas). That is certainly enough time for any such alleged ties to be severed.

13. Finally, 24 hours is not enough time to restart *any* business. Imagine a retail establishment burns down and loses its entire inventory, its marketing channels are shutdown, its

---

[4] Its important to note that much of the contraband seized support the proposition residents of the apartment were growing marijuana (something legal under the D.C. code under limited quantities, *see* D.C. Code §48–904.01(a)(1)(C)). Such evidence supports the entirely logical possibility that marijuana seized was grown and not purchased from some vast unknown marijuana drug network that Ms. Henry could somehow suddenly reconnect with in a quick 24-hour departure from the halfway house. And certainly no marijuana plants could be grown in a 24 hour period.

operating capital destroyed, and its owners and employees subject to severe restrictions on their freedom of movement and ability to communicate with the outside world for an entire year. No business (legal or illegal) could be restarted simply because the owner was given a mere 24 hours to spend with their family without the government looking over their shoulder. Any argument to the contrary is frankly and, respectfully, not rooted in reality.[5]

14. The government's final argument that Ms. Henry's mother somehow condoned the illegal activity is simply not enough to deny this request. First, the evidence it relies on to make such assertions are speculative at best. Regardless of whether Ms. Henry's mother had been to the apartment and seen marijuana in "plain view,"[6] it does not logically follow that her mother would tolerate such behavior in her own home with her family on Christmas. There is simply no motive for Ms. Henry's mother or any family member to allow criminal behavior during a 24-hour release period after watching their daughter's entire life completely uprooted and thrown into jeopardy as a result of the arrest and prosecution of this case for over a year. Second, this concern is easily dispensed with by placing Ms. Henry into her father's custody, which the defense proposes here.[7]

15. Undersigned also understands from the record that the Court does not view Ms. Henry's consistent and lengthy pretrial compliance as a basis to grant her any social passes or loosen her release conditions at all. As the Court has noted "compliance—even model compliance—with the Court's requirements is not enough" to change Ms. Henry's

---

[5] The defense does not concede Ms. Henry owned a drug business. For the purposes of this metaphor, undersigned is simply relying on the government's theory of the case.

[6] The defense does not concede this point but accepts it for argument purpose.

[7] To be clear, Ms. Henry's parents live together in the address proposed. However, the government cannot credibly argue that the mere presence of Ms. Henry and her mother together could somehow lead to illegal, unfettered marijuana distribution on Christmas.

conditions of release [E.C.F. 74 at 3]. The Court has similarly noted that "compliance with conditions" is "merely what is expected of her, and as such, it does not warrant her release . . . " [E.C.F. 38 at 3].

16. The Court is of course correct on these points. Ms. Henry's compliance keeps her out of jail and she must do what the Court orders her to do. In life, we often do not "get points" for just doing what we are supposed to do. However, undersigned urges the Court to consider that Ms. Henry's demonstrated compliance with pretrial conditions cannot be divorced from the actual legal standard for release or modification of conditions of release.

17. To determine whether to release Ms. Henry on this request, the Court must consider the "least restrictive . . . combination of conditions" under which Ms. Henry could be released before trial while preserving the safety of the community. 18 U.S.C. § 3142(c)(B). Ms. Henry's demonstrated, yearlong compliance with Court Ordered conditions is compelling evidence that the Court *can* fashion a set of conditions that would preserve the safety of the community.

18. Because of her demonstrated, yearlong compliance with Court Ordered conditions, the Court can rest assured the community remains safe by Ordering her to

   a. Travel directly from the Halfway House to ███████████████, Vienna, VA 22182 at a specific, court ordered time;

   b. Remain at ███████████████ under the supervision and custody of her father, Douglas Henry, until such time she must depart to return to the halfway house timely pursuant to the proposed release order;

   c. Return directly from ███████████████ to the halfway house by a specific, court ordered time;

    d.  Maintain all other conditions of release including a condition not to violate the laws of the United States, the District of Columbia, and the Commonwealth of Virginia.

19. While undersigned does not concede Ms. Henry is in fact a danger to the community, it is understood the Court, at this stage, has made that finding.  As such, however, that does not end the inquiry.  The above-mentioned conditions could absolutely ensure the safety of the community.  And the Court can remain confident Ms. Henry will follow those orders precisely because of her demonstrated, yearlong compliance with stringent Court Ordered conditions.

20. Should the Court grant the proposed relief, the same motivation and deterrence that has led Ms. Henry to obtain and maintain employment, drug test negatively, meet the strict rules of the halfway house, and comply with requirements imposed by Pretrial Service will continue to exist.

21. That motivation and deterrence is based on Ms. Henry's desire to stay out of the District of Columbia jail.  And if past is prologue, history absolutely demonstrates that Ms. Henry's fear of actual incarceration is a sufficient deterrent to prevent her from deviating from court orders or engaging in illegal activity during this 24-hour period.

22. Lastly, undersigned asks the Court to consider the holiday season as a time for family and reflection and recognize that such contact can only serve to benefit Ms. Henry on her road to rehabilitation, which will not only help protect the community but also actually be good for the community in the long term.  It is well recognized that family support serves as the strongest medicine for recidivism and that is what Ms. Henry asks this Court for—the ability to receive family support this Christmas for a mere 24 hours.

WHEREFORE, undersigned respectfully asks this Honorable Court to release Ms. Henry from the halfway house to spend the Christmas holiday with her family and impose whatever conditions it deems necessary to ensure she goes directly from the halfway house to her parent's home and returns directly from her home to the halfway house and to give Ms. Henry an opportunity to further prove herself to this Honorable Court.

Respectfully Submitted,

SCROFANO LAW PC

BY: _____
Joseph A. Scrofano [Bar No: 994083]
*Counsel for Tiffany Henry*
406 5th Street NW Suite 100
Washington, DC 20001
jas@scrofanolaw.com
Ph: 202-870-0889


_____/s_____
Jay Mykytuk [Bar No: 976596]
*Co-Counsel for Tiffany Henry*
406 5th Street, NW Suite 120
Washington, DC 20001
jpm@scrofanolaw.com
Ph: 202-630-1522