**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TIFFANY HENRY,<br><br>Defendant. | **Criminal No. 17-216-01 (CKK)** |

**MEMORANDUM OPINION**
(December 21, 2018)

On December 19, 2018, Defendant Tiffany Henry (1), through counsel, filed a [122] Motion for Holiday Release ("Def.'s Mot.") requesting permission to be released from her halfway house placement from December 24, 2018, at 8:00 PM, through December 25, 2018, at 8:00 PM, for the purpose of spending Christmas with her family at her family's home in Vienna, Virginia. The Government filed its [123] Opposition to the Defendant's Motion for Holiday Release ("Gov't Opp'n") on December 20, 2018, reiterating, *inter alia*, that the Court's prohibition of social passes must mean it was part of the "least restrictive measure" under which Ms. Henry could be released before trial while preserving the safety of any other person and the community. Gov't Opp'n at 3; *see also* 18 U.S.C. § 3142(c)(1)(B). In her [124] Reply ("Def.'s Reply") on December 20, 2018, Ms. Henry insists that her temporary release would not endanger the community, argues that the Court should not fall back on its prior reticence, and should recognize her father as an appropriate third-party custodian for this limited release.[1] For the reasons set forth herein, however, Ms. Henry's request is **DENIED**.

---

[1] At the Clerk's request, Ms. Henry re-filed her Motion and Reply at docket entries 125 and 126, respectively, to correct a clerical error. There is no indication that the substance of those filings has changed.

On November 13, 2017, Ms. Henry was charged in a five-count Indictment with: Conspiracy to Distribute and Possess with Intent to Distribute Marijuana and Cocaine (Count One); Unlawful Use of a Communication Facility (Count Two); Unlawful Distribution of Marijuana (Count Three); Unlawful Possession with Intent to Distribute Marijuana (Count Four); and Unlawful Possession with Intent to Distribute Cocaine (Count Five). Subsequent to the indictment, Magistrate Judge Michael Harvey issued an arrest warrant for Ms. Henry.

Ms. Henry appeared in court before Magistrate Judge Harvey, on November 15, 2017, for her initial appearance and arraignment, and she entered a plea of not guilty on all charges. The Government made an oral motion for pretrial detention and Magistrate Judge Harvey scheduled a November 20, 2017, detention hearing in response thereto. At the conclusion of the November 20, 2017, detention hearing, Magistrate Judge Harvey denied the Government's motion for detention and released Ms. Henry to a halfway house. The Government appealed that ruling, and on November 30, 2017, this Court held a hearing on the issue of whether Ms. Henry should be released or detained pending trial. The Court determined that Ms. Henry could be released pending trial but that such release would be made subject to the following conditions:

> that she be released into a work release/halfway house; that she have no social passes, including that she not possess a passport; that she stay away from the apartment she leased; that she report to PSA weekly by telephone; that she be placed in a weekly drug testing program; and that she seek and maintain employment.

Dec. 1, 2017 Mem. Op. and Order, ECF No. 22, at 2. Those conditions reflected the Court's assessment of the least restrictive combination of conditions that would reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(c)(1)(B). On December 11, 2017, Ms. Henry was transported to and placed in a halfway house.

Since this release into the community, Ms. Henry has chafed at the prohibition of social passes. On December 20, 2017, Ms. Henry moved for a social pass from the halfway house in

order to spend several days with her family for Christmas. Over the Government's objection, the

Court granted-in-part and denied-in-part Ms. Henry's request, permitting her release on December

25, 2017, from 9:00 a.m. until no later than 5:00 p.m. In doing so, the Court found that

> Since being placed in the halfway house on December 11, 2017, Ms. Henry has
> been compliant with the rules and regulations of the halfway house; she has
> reported to PSA by telephone as required; she has been actively seeking
> employment; and she has tested negative for illegal substances at her December 14,
> 2017 and December 21, 2017 drug tests.

Dec. 22, 2017 Mem. Op., ECF No. 30, at 3. In light of "Ms. Henry's desire to spend time with her

family during the Christmas holiday," the Court made "a *one-time exception* to the condition of

'no social passes.'" *Id.* (emphasis added).

The Court denied Ms. Henry's next two requests for a social pass, in January 2018 and

November 2018. Her repeated requests demonstrated an attempted end-run around a "key

condition[ ]" of her [19] Release Order, namely that social passes were prohibited. Jan. 26, 2018

Mem. Op., ECF No. 38, at 3-4; Nov. 21, 2018 Mem. Op., ECF No. 108, at 3.

Ms. Henry appears to remain in compliance with the Court's Release Order, with one

possible exception. As of November 27, 2018, the halfway house had not notified PSA of any

infractions by Ms. Henry; she was continuing to report to PSA by telephone; she was maintaining

her employment; and she was testing negative for illegal substances.[2] Not long beforehand,

however, PSA noted that it issued a verbal warning to Ms. Henry for water loading after one of

her recent drug tests. In turn, the Court expressed concern at its Status Hearing on October 31,

2018, about the several instances in which Ms. Henry has been found possibly engaging in water-

loading. *See, e.g.*, Min. Order of Oct. 31, 2018; Min. Order of Apr. 4, 2018. The Court cannot

---

[2] As anticipated by the Court's previous discussion of Ms. Henry's prescription, she has continued
to test positive for Amphetamines. *See* Dec. 1, 2017 Mem. Op. and Order, ECF No. 22, at 5.

recall any instance in which Ms. Henry has challenged PSA's conclusion that she was water loading.

Despite evidence that Ms. Henry is complying with the Court's [19] Release Order, the Court cannot treat this fourth request for a social pass in the same way that it handled the first and only such request that it granted. "Ms. Henry's compliance with the conditions imposed on her . . . is merely what is expected of her, and as such, it does not warrant her release . . . ." Dec. 22, 2017 Mem. Op., ECF No. 30, at 3. As the Court has previously discussed, one of the key conditions to Ms. Henry's pretrial release was the Court's adoption of the condition that Ms. Henry have no social passes.

Now that Ms. Henry seeks a social pass for a fourth time, the Court shall further distinguish the pass that it granted last Christmas. At the time, the Court had limited information. Discovery was in its infancy. *See* Min. Order of Dec. 4, 2017 (discussing initial discovery). The Government did not supply any details of that discovery in opposing Ms. Henry's first Motion for Holiday Release. Rather, the Government simply argued that Ms. Henry failed to identify any factual developments that could justify an exception to the Court's then-recent release order prohibiting social passes. Dec. 21, 2017 Gov't's Opp'n to Def.'s Mot. for Holiday Release, ECF No. 27, at 3. Since then, the Government has frequently discussed, in hearings and filings, the large volume of evidence recovered from Ms. Henry's apartment. The Government's Opposition to the pending motion attaches, for the first time, a sampling of photographs documenting that evidence. *See* Gov't Opp'n at 10 & Ex. A. The Government has alleged that Ms. Henry deployed her intelligence and training to facilitate a large-scale drug distribution conspiracy with a substantial online component. *Id.* at 10-11. Products recovered from the apartment included "large digital scales, money counter, beakers, packaging materials, waxes, shatters and edibles," together with more

than $75,000 in cash. *Id.* at 11-12. Ms. Henry fails to acknowledge that the drugs in the apartment included not only marijuana, but also cocaine. Although the Court is not ruling on merits issues, the Government's proffer of evidence does raise grave concerns for the Court.

Moreover, the Government's filings in 2018 have elaborated its concerns about activities in which Ms. Henry could engage if she were released and wholly unsupervised. Those concerns include her "full and unmonitored access to the internet," as well as the potential for "open telephone conversations," "contact with individuals and unindicted co-conspirators," "contact with potential government witnesses," and unfettered travel beyond her family's home. *Id.* at 12.

In opposing Ms. Henry's November 2018 request, if not earlier, the Government explained that Ms. Henry's mother was one of the apartment's lessees, and that, "[u]pon information and belief, the defendant's mother frequented that apartment and arguably condoned the defendant's illegal narcotics activities." Nov. 20, 2018 Gov't's Opp'n to Def.'s Mot. for Holiday Release, ECF No. 105, at 2-3. As the Government now demonstrates in its photographs, the copious narcotics and accoutrements "were in plain view" when the search warrant was executed. *Id.* (noting also that the narcotics issued a "very strong [odor] throughout the apartment"). Although the cocaine was not in plain view, Ms. Henry was charged with cocaine offenses along with her co-conspirators.

Again, without commenting on the merits, the Court makes clear that the indicted offenses carry significant potential penalties. The fact that Ms. Henry has not been charged with a violent crime, or arrested with firearms in her apartment, does not fully mitigate the dangerousness of her indictment for drug trafficking crimes. *See United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985); *see also United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985) (explaining that the Bail Reform Act's "statutory language, as well as the legislative history, unequivocally establishes

that Congress intended to equate traffic in drugs with a danger to the community").

The Court is concerned that Ms. Henry's family may not fully appreciate the seriousness of these charges. For its part, the Government reiterates its view that Ms. Henry's family cannot necessarily be depended upon to enforce the Court's conditions. Assuming, *arguendo*, that the Court's only concern was Ms. Henry's contact with her mother, the proposed release into the custody of her father is a distinction without a difference. Her parents reside in the same home. *See* Def.'s Mot. at 5 & n.7. The Government is not satisfied that Ms. Henry's father—whom she proposes as third-party custodian for this release—or any other family member would be more likely to identify and report any violations of release conditions. Gov't Opp'n at 13. Ms. Henry's Reply includes a declaration from her father, Douglas Henry, that purports to reassure the Court that he would actively supervise Ms. Henry during the holiday release. *See* Decl. of Douglas Henry in Supp. of Def.'s Mot. for Holiday Release, ECF No. 124-1. In its [19] Release Order, the Court decided not to release Ms. Henry into third-party custody. None of the developments in this case persuades the Court to alter that decision, either for the Christmas holiday or the longer term.

When the Court adopted Magistrate Judge Harvey's decision to release Ms. Henry into a halfway house, the Court agreed that the prohibition of social passes was part of the least restrictive combination of conditions that would reasonably assure the safety of the community. *See* Dec. 1, 2017 Mem. Op. and Order, ECF No. 22, at 6 (citing 18 U.S.C. § 3142(c)(1)(B)). There has been no new information since the Court's last decision, in November 2018, to deny an exception that would persuade the Court to grant such an exception now. The underlying reason for the prohibition of social passes remains unchanged.

For the foregoing reasons, Ms. Henry's [122] Motion for Holiday Release is therefore **DENIED**.  A separate Order accompanies this Memorandum Opinion.

                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge